Edward Thomas O'NEILL, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–82–0767–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 1, 1984.

Madeline Sitzes, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., James C. Brough and Ned Morris, Harris County Asst. Dist. Attys., Houston, for appellee.

Before WARREN and BASS, JJ., and GUPTON, J., Court of Criminal Appeals, Retired.

## OPINION ON MOTION FOR REHEARING

T.M. GUPTON, Justice (Retired).

Appellant's Motion for Rehearing is granted. The opinion delivered June 14, 1984 is hereby withdrawn, and the following opinion is substituted therefor.

Appellant, Edward Thomas O'Neill, was tried before a jury for the offense of aggravated sexual abuse of a child.[1] After a guilty verdict was returned, the court assessed punishment at 75 years confinement in the Texas Department of Corrections. The judgment is affirmed.

On December 7, 1981, at approximately 6:10 p.m., appellant and the complainant's mother picked up her fifteen-month-old daughter at the Kinder Care Nursery located in west Houston. The child was drowsy, and although this was somewhat unusual, she had recently had a cold, and therefore, her mother was not particularly alarmed. They arrived home a few minutes later at which time appellant insisted, over the mother's objections, that she go to the grocery store to shop for food and to a local convenience store to buy some firewood. In order to avoid further argument, the mother made a shopping list and left the townhouse at 6:45. Appellant stayed home to take care of the little girl.

After leaving the house, the mother did the shopping and returned home approximately 45 minutes later. She was met by appellant as she pulled the car into the driveway. Although he had been fully dressed when she left, he was now wearing only a pair of cut-off blue jeans with no shirt. Appellant, who was soaked with perspiration and appeared panic-stricken, ran up to the car window and told her something was wrong with the little girl. The mother then ran into the house and found her daughter, wearing nothing but a diaper, lying with her back on the couch. She turned the child over and noticed that she was soaking wet, that her eyes were glassy, and that she could not move her arms or legs.

Apparently, appellant had already notified the emergency medical service, because an ambulance arrived almost immediately thereafter. According to the testimo-

---

1. Although there was no offense, so entitled, in the 1981 Penal Code. An offense of "sexual abuse of a child" was *per se* "aggravated sexual abuse", a first degree felony under Texas Penal Code section 21.05 (repealed, see now section 22.021) if the victim is younger than fourteen years. The complainant in the case at bar was fifteen *months* old at the time of the commission of the alleged offense. Moreover, the court's charge correctly reflected the offense of aggravated sexual abuse.

ny of the EMS personnel, appellant told each of them somewhat different versions of what had happened. However, the essence of his explanation was that the child must have fallen down the stairs while he was out of the room. He said he heard a "thud," then either came in from outside, upstairs, or from the bathroom and knocked the door into the child. He said he did not think the door hit the child hard enough to cause serious injury. He further explained that after the impact the child started crying, then vomited and lapsed into a coma. He then called for an ambulance and went outside to await its arrival.

The EMS personnel tried to revive the child, but were unsuccessful. They transported the child to nearby Alief Hospital. After arriving at the hospital, doctors administered emergency treatment until "Life Flight" arrived and transported the child to Hermann Hospital. Efforts by Hermann Hospital's emergency personnel continued, however, the child died at 12:00 noon the next day.

The following day an autopsy was performed by Dr. Aurelio Espinola, Deputy Chief Medical Examiner for Harris County. It was his opinion that the cause of the child's death was a subdural hematoma. Furthermore, the doctor concluded that because there were no outward signs of injury to the skull, which would be consistent with a fall or sudden blow to the head, this subdural hematoma probably resulted from what is known as "infant shake syndrome" or "shaking syndrome."

He testified that "infant shake syndrome" occurs when a small, undeveloped child is suddenly and severely shaken, thereby causing the brain to slam against the cranial wall. This impact causes breakage of the small bridging veins connecting the skull to the brain: that area fills with blood, and the subsequent increase in pressure around the brain causes the child to lapse into a coma and eventually die, if the pressure is not relieved.

During his autopsy, Dr. Espinola noticed a bruised area between the child's vagina and anus and decided to test for signs of sexual abuse. He took swab samples from the child's mouth, anus, and vagina, then tested these samples for spermatoza and acid phosphatase, an element of semen. Although the test for spermatozoa was negative, the test for acid phosphatase was positive, and further test revealed this substance was of a prostatic origin.

After receiving these results, Dr. Espinola contacted Detective William Allen Ogg of the Harris County Sheriff's Department and advised him of the test results and his conclusion that the child had been the victim of sexual abuse. Detective Ogg later went to appellant's home, and after receiving permission from the child's mother, searched the house for other evidence that could confirm the commission of the alleged offense. He recovered several pieces of clothing and diapers from various trash cans and a laundry basket, then brought those items back to the police lab for testing. The test revealed the presence of various substances on the diapers and clothing: semen, pubic hair, acid phosphatase, uribilogen (an element of feces), and type A and B blood. Additional tests revealed the child had type A blood, and appellant had type B. Furthermore, the pubic hairs found on the child's diaper were compared to a sample taken from appellant and were determined to be extremely similar.

Based upon these facts, appellant asserts fourteen grounds of error on appeal. In his first four grounds of error, he asserts that the evidence presented at trial was insufficient to support a conviction for the offense of aggravated sexual abuse. Sexual abuse of a child was defined in section 21.10 of the Texas Penal Code, which was repealed in 1983. This provision stated:

A person commits an offense if, with intent to arouse or gratify the sexual desire of any person, he engages in *deviate sexual intercourse* with a child, not his spouse, whether the child is of the same or opposite sex, and the child is younger than seventeen years.

Tex.Penal Code Ann. sec. 21.10, *repealed by* Acts 1983, ch. 977, § 12, 1983 Tex.Gen. Laws 5311, 5321 (emphasis added).

■ Sexual abuse of a child was *per se* aggravated sexual abuse under section 21.-05(a) of the Texas Penal Code when the age of the complainant is under 14 years. Moreover, it is well-settled that the intent to arouse or gratify the sexual desire of any person can be inferred from the sexual act itself. *Ferguson v. State,* 579 S.W.2d 2 (Tex.Crim.App.1979); *Torme v. State,* 525 S.W.2d 9 (Tex.Crim.App.1975). Therefore, in the case at bar, the only remaining elements necessary to sustain appellant's conviction are that the physical act of deviate sexual intercourse occurred with the complainant, and that appellant was the perpetrator of that act.

■ In both direct and circumstantial evidence cases the court is to review the evidence in the light most favorable to the verdict or judgment. *Houston v. State,* 663 S.W.2d 455 (Tex.Crim.App.1984). Furthermore, in determining the sufficiency of the evidence to support a conviction, the test for review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State,* 654 S.W.2d 465, 466 (Tex.Crim.App.1983) (op. on reh'g). In a circumstantial evidence case this test is satisfied when the evidence excludes every other reasonable hypothesis except the guilt of the accused. Moreover, if the evidence supports an inference other than guilt, a finding of guilt is not a rational finding. *Id.* at 472. In the case at bar we conclude this test is satisfied.

■ The state introduced the following evidence at trial: the presence of a bruised area between the child's vagina and anus, a second bruised area along the child's buttocks and legs, acid phosphatase of a prostatic origin discovered in the child's mouth and anus, semen stains and pubic hairs found on the child's diapers and clothes, and traces of A and B blood and feces found on the child's sock. This court might conceive of a reasonable hypothesis that would possibly explain one or two of the pieces of evidence when taken separately. However, when all of the evidence is examined as a whole, and the fact that acid phosphatase of a prostatic origin is a substance found only in the adult male is noted, there is simply no other reasonable hypothesis.

Appellant further contends there was insufficient evidence to prove beyond a reasonable doubt that he was the perpetrator of the alleged offense. However, the evidence set forth above, as well as the physical condition of the child, allows no other reasonable hypothesis than an affirmative finding on this element. The child's mother testified that there were no other males around the child on the evening of the alleged offense. Moreover, the employees of the nursery, the EMS volunteers, the hospital and morgue staff all testified that no deviate sexual intercourse was performed on the complainant while she was under their care and control. There was also testimony by the child's physicians that had the child been conscious during the commission of the offense there would have been a bruising and tearing of the mouth and anus. This was a condition which would not have resulted, and did not in this case, if the child had been comatose. This evidence together with evidence of the appellant's anger over the child's obvious lack of warmth to him, his insistence that the child's mother leave him alone with the little girl on the evening the act occurred, and the physical evidence taken from appellant's own home lead to no other reasonable hypothesis except, that appellant committed the offense.

Appellant's first four grounds of error are overruled.

In his fifth ground of error appellant contends the trial court erred in admitting evidence of infant shake syndrome, because it constituted evidence of the extraneous offense of murder and injury to a child and there was no evidence that this offense occurred or, if it did occur, that he was the perpetrator. Furthermore, it is his contention that the introduction of this evidence, without proof that he committed the

crime, was so highly prejudicial that it caused the jury to convict him of murder, a crime that was not contained in the allegations of the indictment. Appellant made a motion in limine, which was denied, to have this evidence excluded.

■ Initially, before any analysis of whether the evidence was proof of an "extraneous offense" and, therefore, erroneously admitted according to the authority cited by appellant, the evidence must have constituted evidence of the commission of a crime or, at the very least, a "bad act." Although "murder" and its various derivatives are certainly crimes, "death" in and of itself is not. In fact, it appears that almost by definition, "infant shake syndrome" lacks the requisite intent for the crime of murder as defined within the laws of this state. From the medical testimony introduced at trial, infant shake syndrome is an abnormal response to what is all too frequently a typical reaction to parental frustration. Merely shaking a child, without any additional aggravating facts, would generally be insufficient to prove the intent to cause death or even serious bodily injury necessary for murder.

Moreover, even if the evidence introduced met the necessary showing of "intent", then the State's evidence eliminated the appellant as the suspect who severely shook the child. The evidence introduced by the physicians concerning the physical symptoms normally evidencing "infant shake syndrome" paralleled the symptoms exhibited by the child in this case: an abnormal period of drowsiness followed by a period of alert normal behavior, the sudden lapse into a coma, and later, death. The obvious conclusion to be drawn from the doctor's testimony was that, if infant shake syndrome was in fact the cause of the child's subdural hemotoma, and she exhibited the normal bodily responses, the shaking probably occurred prior to the time the child was picked up and brought home. Certainly, appellant could not have been harmed by evidence which tended to *exclude* him as the perpetrator.

Finally, it is well settled that the State is entitled to show all of the relevant surrounding circumstances to an offense. In the present case the evidence concerning both the fact of the child's coma and subsequent death was necessary to fully explain the case to the jury. The fact of the child's death was certainly necessary to explain the absence of the child at trial as well as to prevent the jury's speculation on the reason for the "medical examiner's" examination, autopsy report, photos and testimony.

Moreover, it was of particular importance for the jury to understand the physical condition of the child immediately prior to and during the commission of the alleged acts of sexual abuse. If the child had been conscious during the alleged sexual abuse, then there would naturally have been a bruising, tearing, and hemorrhaging of the rectum and the mouth. However, Dr. Bruce Taylor, the child's neuro-surgeon, testified that a subdural hematoma, depending upon the stage of injury, would cause a waxing and waning of consciousness and that if insertion had been made during a period of unconsciousness, the normal bruising and tearing may not occur. If the jury had been left with the impression that the child was conscious during the acts in question, then they would have considered the absence of these symptoms as exculpatory evidence. Thus, it was important for the jury to understand how the fact and cause of the child's death, subdural hematoma, would have affected what otherwise would have been the normal bodily responses to deviate sexual intercourse with a fifteen-month-old child.

Accordingly, we hold that the above evidence was admissible and necessary for the jury's understanding of the case, and overrule appellant's fifth ground of error.

■ Appellant's eighth ground of error attacks the admission of various items of physical evidence presented at trial. He argues they were not properly tied to the commission of this offense. However, during the State's tender of this evidence, appellant's only objection to the introduction

of this evidence was to the hearsay written on the outside of the bags in which the items were contained. Appellant's trial objection was sustained and the hearsay evidence was not admitted. Since appellant's objection was granted, and in the absence of an adverse ruling on the point herein presented, appellant has no basis to claim the trial court erred. *Carrillo v. State,* 591 S.W.2d 876 (Tex.Crim.App.1979); *Bryant v. State,* 570 S.W.2d 921 (Tex.Crim. App.1978); *Hopkins v. State,* 480 S.W.2d 212 (Tex.Crim.App.1972).

Appellant's eighth ground of error is overruled.

■ In his ninth ground of error appellant attacks the admissibility of Dr. Joplin's testimony that the child had a yellow bruise under her right eye and his later testimony, in connection with a vaginal bruise, regarding the color scale of bruises used to determine the age of that injury. Appellant failed to object to the testimony concerning the bruise under the child's eye. His objection to the testimony of the color scale was late and more importantly, did not direct the court to that portion of the testimony he considered "evidence of an extraneous offense." Apparently, appellant attempted to object to the Doctor's testimony concerning the color scale, because then the jury would infer the "yellow-brownish" bruise to the right eye was four to seven days old, and thus a collateral issue. However, he never directed the court to that portion of the testimony. In fact the court, in response to appellant's objection and motion for mistrial, stated that it thought the evidence was relevant and it did not see any reference to an extraneous offence. The portion of Dr. Joplin's testimony regarding the color scale and age of a blue-red bruise was relevant and necessary to the jury's understanding of the child's vaginal injury. Therefore, at least in part, the evidence of the color scale was admissible at trial. Appellant's failure to timely and specifically object to testimony of the color scale which inadvertantly related to the child's eye injury, waived his right to complain of any error in its admission.

Appellant's ninth ground of error is overruled.

■ Appellant complains in his tenth, twelfth, and thirteenth grounds of error that the trial court erred in allowing certain volunteered and unresponsive remarks made by three of the prosecution's witnesses. The theory behind an otherwise late objection to a nonresponsive answer is that to do otherwise would deprive the party of his right to object to inadmissible testimony contained within the statement. Therefore, a party is allowed to object after the witness has volunteered the information. However, it is only error for the trial court to overrule such an objection if the volunteered and unresponsive testimony is otherwise *inadmissable.* 1 Wigmore, *Evidence* § 18 (Tillers rev. 1983); 3 Wigmore § 785 (Chadbourn rev. 1970).

■ Initially, appellant complains of the court's failure to sustain counsel's objection to an unresponsive answer by the child's mother. The mother stated that appellant insisted, over her objection, that she leave the house and go to the stores on the night of the offense. This testimony was clearly admissible as one more circumstance to be used in the jury's consideration of this circumstantial evidence case. *See Bailey v. State,* 532 S.W.2d 316 (Tex. Crim.App.1976). Moreover, this same evidence was later elicited on direct examination without objection. We find no error in the court's ruling on this evidence.

■ Appellant's twelfth ground of error concerns the volunteered statement by Detective Ogg that a towel, recovered from the scene and the subject of the examination, was "probably used to clean up the infant." Appellant objected, claiming the statement was both unresponsive and outside the evidence. The evidence was indeed outside the record, and the trial court sustained the objection and instructed the jury to disregard it for any purpose. We conclude that this instruction by the court was sufficient to cure any possible harm.

*American Plant Food Corp. v. State*, 587 S.W.2d 679 (Tex.Crim.App.1979); *Collins v. State*, 548 S.W.2d 368, 376 (Tex.Crim.App. 1976).

■ Finally, appellant complains of the unresponsive remark made by parttime paramedic and full-time assistant district attorney, Bill Camp. Upon direct examination, Mr. Camp stated that he did not immediately understand appellant's version of how the child had fallen and did not make further inquiries. Defense counsel objected, but stated no specific grounds for his objection. This type of general objection is insufficient to preserve error. *Quinones v. State*, 592 S.W.2d 933 (Tex.Crim.App. 1980).

Appellant's tenth, twelfth, and thirteenth grounds of error are overruled.

In his eleventh ground of error, appellant contends the trial court erred in overruling his objection to a question by the State, which appellant contends was outside of the record and a misstatement of fact. Appellant complains of the following testimony:

Q. That rectum could have been completely full of semen, spermatozoa and acid phosphatase; could it not, ma'am?

A. It could have. I would not have noticed internally. I did not check internally.

Q. If the Medical Examiner and a toxicologist came in and said it was full of semen—

Mr. Stripling: Objection, Your Honor, outside of the record. Misstatement of fact.

The Court: Overruled, Counsel.

(By Mr. Morris):

Q. —was full of acid phosphatase or did have acid phosphatase in that rectum, you wouldn't have any quarrel with that; would you, ma'am, from what you saw out there?

A. No, sir.

■ The focus of the prosecutor's inquiry was to establish that the extent of the nurse's rectal examination would not have permitted her to say whether there was semen, spermatozoa, or acid phosphatase present. Just moments before defense counsel had let pass a similar question by the prosecutor without any objection. It is well-settled that no error is preserved where the objection was not made at the earliest opportunity. *Marini v. State*, 593 S.W.2d 709 (Tex.Crim.App. 1980) at 714.

■ Moreover, the prosecutor's question also included a *hypothetical* situation where the medical examiner said the rectum had acid phosphatase in it. This assumes a fact that *was* in evidence. Therefore, appellant had a duty to properly direct his objection to only that portion of the prosecutor's question that was objectionable. *LaBome v. State*, 624 S.W.2d 771 (Tex.App.—Houston [14th Dist.] 1981, no pet.).

Appellant's eleventh ground of error is overruled.

In appellant's sixth ground of error, he states the trial court erred in overruling counsel's objection to State's Exhibit 34, a photograph of the vaginal area of a female child, because there was no evidence that the photograph was of the complainant or in any way related to a material issue at trial. Dr. Dennis Kopaniky, the neuro-surgeon who operated upon the complainant prior to her death, testified that he could not identify the picture as being of the deceased. However, the doctor did testify concerning the apparent discoloration and bruising around the area to the entrance of the vagina and around the buttocks and legs and stated that the discoloration and bruising was consistent with the attempted penetration by a foreign object and other trauma to the buttocks area. He further stated that the bruises were not consistent with the placement of a catheter, nor was the bruised area around the buttocks caused by "blood pooling" which would have occurred after death. He stated his testimony was based on his experience as a doctor and neurosurgeon, and that he could not identify the photograph as being of the

deceased because he did not observe the vaginal area of the deceased during his procedures.

■ However, the State later identified Exhibit 34 as being a picture of the complainant through the testimony of Dr. Espinola, the medical examiner and physician who examined the child's vaginal area during his autopsy, and thus, had personal knowledge of her condition. Therefore, although a full predicate was not laid during the direct examination of Dr. Kopaniky, the evidence subsequently became admissible through Dr. Espinola, and any error in the trial court's premature admission was rendered harmless. *Jones v. State*, 587 S.W.2d 115 (Tex.Crim.App.1979).

Appellant's sixth ground of error is overruled.

■ In his seventh ground of error, appellant challenges the admissibility of several post-autopsy photographs taken of the child, and contends they were irrelevant to any issue in the case and were inflammatory, prejudicial, and cumulative of the medical examiner's testimony. It is well-settled that the admission of photographs rests largely within the discretion of the trial judge, whom must determine whether the photos serve a proper purpose for the jury's enlightenment. *Terry v. State*, 491 S.W.2d 161 (Tex.Crim.App.1974). The decision of the trial judge will not be disturbed absent a showing of abuse of that discretion. *Id.*

■ Moreover, if a verbal description of a deceased body is admissible, then a photograph depicting the same is admissible. *Heckert v. State*, 612 S.W.2d 549 (Tex.Crim.App.1981); *Hall v. State*, 619 S.W.2d 156 (Tex.Crim.App.1980). Only when the probative value of the photograph is very slight and its inflammatory aspects great, will it be an abuse of discretion to admit the photograph. *Harrington v. State*, 547 S.W.2d 621 (Tex.Crim.App. 1977). As stated in *Hall v. State*, 619 S.W.2d 156 (Tex.Crim.App.1980):

> The probative value of the photographs in question, depicting the position of the

body, the location, nature and extent of the wounds to the body, outweighs any inflammatory aspects they may have had on the jury. They were properly admitted.

■ However, as a general rule, post-autopsy photographs are inadmissible because they depict primarily what was done by the doctor who performed the surgery, rather than what was done by the appellant. It is not simply because the deceased was removed to a clinical surroundings, *Clark v. State*, 627 S.W.2d 693, 705 (Tex. Crim.App.1982), but rather that the "massive mutilation of the body caused by the surgery necessary in performing the autopsy" is generally so highly prejudicial and inflammatory that it would not be easily outweighed by any possible probative value. *Terry v. State*, 491 S.W.2d 161 (Tex.Crim. App.1973).

■ We do not find *Terry* to be dispositive of the case at bar. Although the photographs introduced were "post-autopsy," they did not show "massive incisions or mutilations," but only a small amount of blood under the body and from the fingertips of the surgeon's gloves. Moreover, the probative value of the picture was great. They depicted the size and condition of the child and the bruises to her vaginal area and buttocks. This allowed the jury to resolve the conflicting evidence, and determine the nature, extent, and location of the bruises. These facts were not obfuscated by the surgery, and were accurately depicted in the complained of photographs. Therefore, we hold that the complained of photographs were admissible, and overrule appellant's seventh ground of error. *See Kelly v. State*, 621 S.W.2d 176 (Tex.Crim. App.1981).

■ Appellant, in his fourteenth ground of error, complains of a portion of the prosecutor's statements made during voir dire. He contends that it was a comment upon appellant's failure to testify in his own behalf. In explaining the State's burden of proof in a criminal case, the prosecutor stated:

Part of that burden of proof goes along with the defendant does not have to testify. That drops back to the original reason for the burden of proof. Obviously, if we didn't have a burden, then you might say: I would like to hear from the defendant. You may or you may not. It's up to the defendant and his lawyer whether he testifies. That will not be up to Mr. Pechacek and I as to whether he testifies in this case. So, you might be like most citizens before you *really think about this burden of proof: I would like to hear from both sides.* That's a natural reaction we get every day down here. So, don't feel bad about your thinking it, but bear in mind, the Court will instruct you, that the defendant does not have to testify. (emphasis added to disputed portion)

The prosecutor's explanation of the law was a proper one, telling the jury that although they might like to be able to hear from both sides, the defendant does not have to testify. If this did constitute an allusion to appellant's silence, such an indirect or implied reference is insufficient to require reversal. *Angel v. State,* 627 S.W.2d 424 (Tex.Crim.App.1982).

Appellant's fourteenth ground of error is overruled.

The judgment of the trial court is affirmed.