TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00196-CR







Tracy Lee Bobo, a/k/a Tracy Thorn, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. CR-94-0464, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING








 Appellant Tracy Lee Bobo, also known as Tracy Thorn, was convicted in a jury
trial of the offense of indecency with a child. See Tex. Penal Code Ann. § 21.11 (West 1994). 
The trial court assessed appellant's punishment, enhanced by two prior felony convictions, at
imprisonment for life. Appellant presents nine points of error asserting that the evidence is legally
and factually insufficient to support his conviction and that the trial court erred in charging the
jury, in admitting inadmissible evidence, and in allowing prosecutorial misconduct. Appellant also
urges that he was denied a speedy trial. We will affirm the judgment.

 In his points of error four, five, six, and seven, appellant asserts that the trial court
erred in denying his motion for a directed verdict because the evidence was both legally and
factually insufficient to sustain the jury's verdict finding him guilty of the offense of indecency
with a child. He argues that the evidence is legally and factually insufficient to prove his guilt of
indecency with a child because it wholly fails to show that he acted with the intent to either arouse 
or gratify the sexual desire of any person. Although appellant concedes that the evidence was
sufficient to prove the charged offense of aggravated sexual assault of a child, the jury did not find
him guilty of that offense. At the State's request and over appellant's objection, the trial court
charged on the offense of indecency with a child. The jury found appellant guilty of the lesser
offense.

 A person commits the offense of indecency with a child if, with a child younger
than 17 years and not his spouse, whether the child is of the same or opposite sex, he engages in
sexual contact with the child. See Tex. Penal Code Ann. § 21.11(a)(1) (West 1994). "Sexual
contact" means any touching of the anus, breast, or any part of the genitals of another person with
the intent to arouse or gratify the sexual desire of any person. See Tex. Penal Code Ann.
§ 21.01(2) (West 1994).

 In reviewing the legal sufficiency of the evidence, the test is whether, after viewing
the evidence in the light most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia,
443 U.S. 307, 319 (1979); Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994); Moreno
v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). This standard of review is the same for
both direct and circumstantial evidence. See Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim.
App. 1991); Mack v. State, 859 S.W.2d 526, 527 (Tex. App.--Houston [1st Dist.] 1993, no pet.). 
In reviewing factual sufficiency of the evidence we view all the evidence "without the prism of
in the light most favorable to the prosecution"; we set aside the jury's verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Clewis approved this standard
of review first articulated in Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet.
ref'd untimely filed). More recently the Court of Criminal Appeals has admonished: "We
emphasize that in performing a factual sufficiency review, the courts of appeals are required to
give deference to the jury verdict, examine all of the evidence impartially, and set aside the jury
verdict 'only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.'" Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997) (quoting Clewis, 922
S.W.2d at 129).

 The victim testified on direct-examination as follows:


Q: Can you tell the jury what happened that time?


A: Well, I don't remember the dates -- I'm sorry.


Q: Do you need a second?


A: I don't know. I think I'm going to cry. I'm sorry.

 -- but my mom was leaving and I didn't understand why she would leave me
with a stranger and stuff, but like she left and the first time I think was -- he
went -- it was like -- he started by taking me in the room, just fondling with
me, and I didn't understand why.


Q: On this occasion --


A: Uh-huh.


Q: -- where was Brandy Ray?


A: I guess she was in the living room. I don't know. It's like I just closed my
eyes and I -- and, you know --


Q: What did -- when he was fondling you, did you have your clothes on?


A: I think I had my shorts off and I had a shirt on.


Q: Where would he do this in the apartment?


A: In the room.


Q: Were you on a couch, on the floor, on the bed, what?


A: On the bed.


* * * * *



Q: What did he say?


A: That he would cut my tongue out and kill my family if I ever told anybody.


Q: Did you take him seriously?


A: Very seriously.


Q: What would happen after he fondled you?


A: He'd -- he would just mess with me and kiss me or, I mean I remember like
little incidents, but I mean he just played with me, like I was a toy or
something.


Q: Did he ever have sex with you?


A: I recall once, but I don't remember very much of it.


Q: What do you remember about the time when he had sex with you?


A: I remember he was -- he took my bottom off and jumped on me and that --
and I don't remember anything else because I was laying there and putting my
hands -- telling him to get off of me and I couldn't get him off of me.


Q: How old were you when this was happening?


A: Nine.


Q: Did he penetrate you?


A: I didn't even -- I don't remember. I don't know what -- I think. He was on
top of me. I was trying to get him off of me. He went, you know, his, you
know -- he was inside of me, but I don't know if what --


Q: Do you recall whether or not he put his penis, his male sexual organ, inside
of your female sexual organ?


A: Yes, sir.


Q: Did he or did he not?


A: Yes, sir.


Q: Yes, sir, he did?


A: Yes, sir.


* * * * *



Q: Do you remember seeing his penis?


A: No, sir, besides other incidents, but not then.


Q: Did he ask you to touch him?


A: Once, but not -- not then.


* * * * *



Q: On the issue of whether or not he ever penetrated your female sexual organ,
your vagina, with his penis, did he do that?


A: Yes, sir.



 The victim's sister, who was seven years old at the time of the alleged offense,
testified on direct-examination that:


Q: While your mom was gone, did you ever notice anything unusual occurring
between Tracy Lee and your sister, Vanessa?


A: Yes, ma'am.


Q: And what was that?


A: One time he made her -- like what do you want me to tell you? I don't --


Q: Well, can you just walk us through step by step? First of all, where were you
when you -- when you saw something unusual?


A: Oh, he always made me get in the corner, you know. So I would peek around
the little -- you know, there's a wall there and so I would peek around and
watch her and him, you know. And he made her lotion him down or
whatever.


* * * * *



Q: Okay. And you are telling us that you would come around this corner
(indicating) and peek and see what was going on?


A: Yes, ma'am.


Q: Okay. Can you tell us what you saw? You started to tell us that you saw
something about lotion?


A: Yeah. She lotioned him down.


Q: What do you mean "she lotioned him down"?


A: On his penis.


Q: She had to put lotion on his penis?


A: Yes, ma'am.


Q: Okay. And then what did you see after that?


A: I guess they would have intercourse.


Q: Okay. And now you're 17 years old now, right?


A: Yes, ma'am.


A: And you understand what intercourse is now, correct?


A: Uh-huh.


Q: Looking back in time now as a 17-year-old, are you certain that that's what
they were doing?


A: Yes, ma'am.



 A defendant's intent to arouse or gratify his sexual desire can be inferred from the
defendant's conduct, his remarks, and the attendant circumstances. See Ranson v. State, 707
S.W.2d 96, 97 (Tex. Crim. App. 1986); McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim.
App. 1981); Nelson v. State, 893 S.W.2d 699, 704-05 (Tex. App.--El Paso 1995, no pet.); Shane
v. State, 685 S.W.2d 89, 90-91 (Tex. App.--Beaumont 1984, no pet.). From the evidence
quoted, any rational trier of fact could find the essential elements of the offense of indecency with
a child beyond a reasonable doubt including the element of the offense that appellant acted with
the intent to arouse and gratify his own sexual desire. The evidence is legally sufficient to support
the jury's verdict. We overrule appellant's fourth and fifth points of error.

 In assessing factual sufficiency we have to consider all of the evidence. Appellant
offered no evidence before the jury in his defense. In his brief appellant asserts that "[t]here is
simply no evidence that the appellant was doing anything sexual and there was simply no evidence
that he was acting with the intent to arouse or gratify the sexual desire of any person." Appellant
attempts to support this assertion with out-of-context excerpts from the testimony of the victim as
follows:


In fact all she could testify about on direct examination by the States Attorney,
Mr. Watts, was Appellant ". . . jumped on me and that -- I don't remember
anything else because I was laying there and putting my hands -- telling him to get
off of me and I couldn't get him off" and when asked by the State "Did he
penetrate you? she responded "I didn't even -- I don't remember." (Emphasis
added) (RR V4P44 L16-21).


Thereafter, there was some confused colloquy between the District Attorney and
the complaining witness about whether in fact Appellants sexual organ was inside
her sexual organ. She then concluded " . . . I don't remember anything about
that part: (RR V4 P45 L 8-9).


Then on cross-examination, she was asked "[a]nd you were testifying earlier about
the time of the alleged rape, right? You don't remember a lot about it, do you?"
to which she admitted "No sir", she was then asked, "and you really not sure
what happened, are you? To which she responded "The only thing I know is
that he was on top of me . . . and that I was hurting or he was moving around
on top of me" Counsel then asked "Okay, But you really are not sure what
happened; isn't that correct?" to which she responded, "I know that he was on top
of me, sir" . . . . (RR V4 P 54 L 12-24 (emphasis added).


Finally counsel asked the complaining witness, who was 19 years old and sexually
experienced when she testified (RR V 4 P 55 L5-8), . . . [a]nd based on what you
know, you're still not sure what happened back then, are you?" To which she
responded, "I don't remember what happened" (RR4 P55 L10-11) (emphasis
added).



 In addition to the victim's testimony, there is the testimony of her sister, who was
an eyewitness, to consider. We have applied the standard of review required by Cain, Clewis, and
Stone. After examining all of the evidence impartially and giving proper deference to the jury's
verdict, we conclude that the evidence is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong or unjust. We hold that the evidence is factually sufficient to
support the jury's verdict. We overrule appellant's sixth and seventh points of error.

 In his third point of error, appellant contends that the trial court erred in submitting
a charge to the jury allowing the jury to convict him of the offense of indecency with a child
because that offense is not a lesser included offense to the charged offense of aggravated sexual
assault of a child. An offense is a lesser included offense if it is established by proof of the same
or less than all of the facts required to establish the commission of the offense charged. Tex. Code
Crim. Proc. Ann. art. 37.09(1) (West 1981). Appellant insists that a required element of proof
of the offense of indecency with a child, but not of the offense of aggravated assault of a child,
is that defendant acted "with intent to arouse or gratify the sexual desire of any person." 
Therefore, appellant concludes that indecency with a child is not a lesser included offense of
aggravated sexual assault of a child.

 It has been held that indecency with a child is a lesser included offense of
aggravated sexual assault of a child even though the indecency offense requires the specific intent
to arouse or gratify the sexual desire of any person, if the evidence permits a reasonable inference
that an act of sexual contact was made with the intent to arouse or gratify the sexual desire of
someone. See Cunningham v. State, 726 S.W.2d 151, 153-54 (Tex. Crim. App. 1987); Pullin v.
State, 827 S.W.2d 1, 3 (Tex. App.--Houston [1st Dist.] 1990, no pet.); Guttlich v. State, 822
S.W.2d 734, 741 (Tex. App.--Fort Worth 1992, pet. ref'd). "[W]hether one offense bears such
a relationship [lesser included] to the offense charged is an issue which must await a case-by-case
determination, both because the statute [38.09] defines lesser included offense in terms of the
offense charged and because it defines lesser included offenses in terms of the facts of the case." 
Cunningham, 726 S.W.2d at 153 (quoting Day v. State, 532 S.W.2d 302, 315-16 (Tex. Crim.
App. 1976) (on reh.)). "[T]hat the indictment did not expressly allege an element of indecency
with a child -- intent to arouse or gratify the sexual desire of any person -- did not preclude the
trial court from proceeding to judgment upon a correctly determined lesser offense. . . . What
must be decided in light of the offense charged and the facts proved is whether in this case
indecency with a child is a lesser included offense of the one alleged." Id., see also Campbell v.
State, 571 S.W.2d 161, 161-62 (Tex. Crim. App. 1978).

 In this case, the victim testified that appellant took her shorts off to fondle her and
to "mess with" her. She testified that, on another occasion, appellant took her "bottoms" off,
jumped on her and would not get off; she did not see his penis, but "he was inside me." This
evidence, and that summarized in the discussion of points of error four through seven, permits a
reasonable inference that appellant acted with intent to arouse or gratify his own sexual desire. 
The circumstances in this case were such that indecency with a child was a lesser included offense
to the offense charged. The trial court did not err in submitting the lesser included offense charge
to the jury, despite appellant's objection. Appellant's third point of error is overruled.

 In his eighth point of error, appellant complains that the trial court erred in
admitting unsigned judgments which were admitted to prove appellant's convictions for prior
felony offenses. At the punishment phase of trial the State offered "pen-packets" containing
judgments showing appellant's prior felony convictions for theft and for "fondling the sexual parts
of a female child under the age of fourteen years with lascivious intent." These judgments were
not signed by the trial court judges. That the judgment in a "pen-packet" is not signed by the trial
judge does not affect the validity of the judgment. See Mulder v. State, 707 S.W.2d 908, 913
(Tex. Crim. App. 1986); Harrell v. State, 643 S.W.2d 686, 690 (Tex. Crim. App. 1983); Kinnard
v. State, 474 S.W.2d 896, 898 (Tex. Crim. App. 1972); Gutierrez v. State, 456 S.W.2d 84, 86
(Tex. Crim. App. 1970). The trial court did not err in admitting the unsigned judgments
evidencing the prior convictions. Appellant's eighth point of error is overruled.

 In his ninth point of error, appellant declares that the trial court erred when during
jury voir dire the court allowed the prosecutor to comment on appellant's failure to testify. The
part of the jury voir dire complained of follows:


Prosecutor: Mr. Thorn is presumed innocent until the State proves beyond a
reasonable doubt by evidence that he is guilty. Can everyone follow that right, that
law? If so, raise your hand. Thank you.


 Mr. Thorn/Tracy Bobo/Tracy Lee also has a constitutional right against
self-incrimination. He cannot be compelled to testify. That is his right. It's in the
top 10 in the Constitution.


 How many of you have more than one child? Okay. Do they ever get in
fights? They probably do it far more frequently than you would like.


 Do they get in fights?


* * * * *



PANEL MEMBER: (Nods head).


Prosecutor: How old are your children?


PANEL MEMBER: Fifteen and 12.


Prosecutor: Okay. Do they ever have arguments?


PANEL MEMBER: Often.


Prosecutor: Often? How do you -- how do you decide what happened when your
two kids have an argument?


PANEL MEMBER: Usually, when they're arguing, it doesn't matter what
happened.


Prosecutor: Swift justice.


 Do you ever pull them aside and talk to them about it?


PANEL MEMBER:  Usually it's together, yes.


Prosecutor:  Usually it's together.


 Do you listen to what one says, you listen to what the other says, you look
at the physical evidence, and then you decide, "All right," whatever the case may
be"?


MEMBER PANEL:  (Nods head).


Prosecutor: In reality, if one of your kids said, "Dad, I'm asserting my Fifth
Amendment right to remain silent," that wouldn't go over very well in the
household, would it?


PANEL MEMBER:  No, it wouldn't. 


Defense Counsel:  Your Honor, may we approach?


THE COURT:  Yes.


(Proceedings at the bench:)



Defense Counsel: I believe that [the prosecutor] is commenting on the fact that my
client, in all probability, will not testify. And coming from a prosecutor, we
believe, especially in voir dire, because of that comment on the fact that he is not
going to testify, the line of questioning, I believe, is pursuant -- it seems to me to
be an indirect attempt to comment on the fact that he will not testify and it's a
conclusion that a juror can make.


THE COURT:  You'd better be careful.


 But I'll overrule the objection.


(Proceedings in open court:)



Prosecutor: In a court of law, a defendant does not have to testify. That is their
right.


 You understand the difference between your house and a court of law,
right?


PANEL MEMBER:  Right.


Prosecutor:  In order to be jurors on this case, you need to, you must, accept that
right. He does not have to testify. He may; he may not. I don't know what he's
going to do. But if he does not testify, you cannot hold it against him.



 The State first contends that the error claimed was not preserved for appellate
review because appellant did not formally object and merely expressed concern about the
prosecutor's statements. We must reject the State's contention because the trial court recognized
appellant's objection and stated "I'll overrule the objection."

 Appellant relies principally on Godfrey v. State, 859 S.W.2d 583 (Tex.
App.--Houston [14th Dist.] 1993, no pet.). In that case, during jury voir dire, the prosecutor
over objection stated: "If he gets up here and testifies, he will say anything to save his hide, he
will get up here and lie . . . . But if he doesn't testify, he must be hiding something. So the law
says we are not going to put him in that predicament. He doesn't have to testify and you can't
consider it." Id. at 584. The appellate court held that this voir dire was not a comment on
appellant's failure to testify but was improper because it was an incorrect statement of the law as
to the reason the law allows a defendant to choose not to testify. The court held that this statement
made by the prosecutor was harmful and reversible error under the former harmful error Rule
81(b)(2). Godfrey is distinguishable from this case.

 A prosecutor's discussion in jury voir dire of constitutional principles and the law
concerning a defendant's right against self incrimination has generally been upheld. In Harris v.
State, 656 S.W.2d 481 (Tex. Crim. App. 1983), the defendant complained of the prosecutor's
statement made during voir dire that "an accused [would] exercise his right not to appear as a
witness against himself to prevent the State from impeaching him with prior convictions." Id. at
485. The Court of Criminal Appeals said: "the statements and their context present a perfectly
legitimate topic for discussion by either party during jury voir dire." Id. at 486.

 In O'Neill v. State, 681 S.W.2d 663 (Tex. App.--Houston [1st Dist.] 1984, pet.
ref'd), the prosecutor stated:


Part of that burden of proof goes along with the defendant does not have to testify. 
That drops back to the original reason for the burden of proof. Obviously, if we
didn't have a burden, then you might say: I would like to hear from the defendant. 
You may or you may not. It's up to the defendant and his lawyer whether he
testifies. That will not be up to Mr. Pechacek and I as to whether he testifies in
this case. So, you might be like most citizens before you really think about this
burden of proof: I would like to hear from both sides. That's a natural reaction we
get every day down here. So, don't feel bad about your thinking it, but bear in
mind, the Court will instruct you, that the defendant does not have to testify. 
(emphasis added to disputed portion)



Id. at 671. The court held that the "prosecutor's explanation of the law was a proper one, telling
the jury that although they might like to be able to hear from both sides, the defendant does not
have to testify." Id.

 Similar explanations of the law made during jury voir dire have been upheld as
proper when the prosecutor was attempting to qualify jurors and to exercise his challenges of
jurors for cause and peremptorily. See Hall v. State, 619 S.W.2d 156, 159 (Tex. Crim. App.
1980); Campos v. State, 589 S.W.2d 424, 426 (Tex. Crim. App. 1979); Hill v. State, 480 S.W.2d
670, 674 (Tex. Crim. App. 1972); McCray v. State, 477 S.W.2d 624, 627 (Tex. Crim. App.
1972); Penrice v. State, 716 S.W.2d 107, 110 (Tex. App.--Houston [14th Dist.] 1986, no pet.);
Vern v. State, 709 S.W.2d 681, 687 (Tex. App.--San Antonio 1986, no pet.); Pinney v. State, 679
S.W.2d 770, 773 (Tex. App.--Fort Worth 1984, pet. ref'd). We hold that the trial court did not
err in overruling appellant's objection to the prosecutor's jury voir dire. Appellant's ninth point
of error is overruled.

 In his first and second points of error appellant contends that he was denied his
constitutional right to a speedy trial. See U.S. Const. amend. VI, XIV; Tex. Const. art. I, § 10. 
Because appellant does not contend that his state right to a speedy trial is greater than his federal
right, we need only consider his federal constitutional right. See Emery v. State, 881 S.W.2d 702,
707, n.8 (Tex. Crim. App. 1994).

 The federal constitutional right to a speedy trial is applicable to state prosecutions. 
See Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967). The length of delay for purposes
of speedy trial analysis is measured from the time a defendant is arrested or formally charged. 
See Marion v. United States, 404 U.S. 307, 313 (1971); Harris v. State, 827 S.W.2d 949, 956
(Tex. Crim. App. 1992). To trigger a speedy trial analysis it must be shown that the interval
between accusation and trial has crossed the threshold dividing ordinary from "presumptively
prejudicial" delay. Doggett v. United States, 505 U.S. 647, 651-52 (1992). When post accusation
delay approaches one year, most courts have held that it triggers the speedy trial inquiry. Id.;
Harris, 827 S.W.2d at 956.

 To determine whether the constitutional right to a speedy trial has been denied, the
Supreme Court devised an analysis that has since been universally followed. See Barker v. Wingo,
407 U.S. 514, 530 (1972). The analysis mandated has four factors: (1) the length of the delay,
(2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) any
prejudice resulting to defendant from the delay. See Id.; Deeb v. State, 815 S.W.2d 692, 704
(Tex. Crim. App. 1991); Sinclair v. State, 894 S.W.2d 437, 439 (Tex. App.--Austin 1995, no
pet.). The application of these factors to a given case is much more difficult than their statement. 
Evidence bearing on each factor must be considered and weighed on a case by case basis. Then
it is necessary to strike a balance between the factors in the circumstances of the particular case. 
See Barker, 407 U.S. at 530; Emery, 881 S.W.2d at 708.

 In making the Barker v. Wingo analysis, the length of the delay has two functions. 
First, it has a trigger function in determining whether the complete speedy trial analysis is
necessary. In this case, several years' delay between formal accusation and appellant's arrest and
trial is sufficient to require the full speedy trial analysis. The second function of the length of
delay is its bearing on the other factors and the extent to which the delay exceeds the bare
minimum considered "presumptively prejudicial." Doggett, 505 U.S. at 652.

 In assessing the seriousness of the length of delay in its second function, the many
circumstances of each case must be considered. In Barker, although the delay was five years, the
Supreme Court, in balancing the factors, found that Barker was not denied a speedy trial. On the
other hand, in Doggett, in balancing the factors, the Supreme Court found that a delay of eight
years contributed to the denial of a speedy trial.

 We observe that preindictment delay has not been accorded any weight in
determining a defendant's Sixth Amendment right to a speedy trial. Even though a defendant's
defense may be somewhat prejudiced by the lapse of time caused by preindictment delay, the
preindictment delay is "wholly irrelevant" to a Sixth Amendment speedy trial claim. See United
States v. Lovasco, 431 U.S. 783, 788-90 (1977). Appellant has neither in the trial court nor on
appeal made a due process claim of oppressive preindictment delay.

 In considering the reason for the delay, different weight should be assigned to
different reasons. A deliberate attempt to delay the trial in order to hamper the defense would
weigh heavily against the State. A more neutral reason such as negligence or overcrowded courts
should be weighed less heavily, but nevertheless should be considered since the ultimate
responsibility for such circumstances must rest with the State rather than the defendant. See
Barker, 407 U.S. at 531; Strunk v. United States, 412 U.S. 434, 435 (1973); Turner v. State, 545
S.W.2d 133, 137 (Tex. Crim. App. 1976). Appellant argues that even though the trial court
apparently believed the State's meager efforts to serve the arrest warrant were sufficient, the delay
was the State's fault and he bears no blame for the delay.

 The analysis of the reason for the delay in this case requires extensive consideration
of the facts. Appellant's specific complaint is that before he was tried there was a ten-year time
lag after the offense was committed and an eight and one-half year time lag after he was indicted. 
As the following discussion will show, the relevant delay in the circumstances of this case is the
time between the return of the original indictment and the appellant's arrest; this was six years and
two months. Appellant argues that during that time he was living openly using his own name in
Oklahoma and Mississippi. He urges that the State was therefore negligent in not discovering
where he was to serve him with the outstanding arrest warrant.

 Although more than two years elapsed between appellant's arrest and his trial, he
does not argue in his brief, and for good reason, that this time should be included in the time
delay. The record shows that the case was not dormant during this time. Five judges appear to
have in some way been involved with the case. Appellant assaulted his first appointed counsel in
open court during a hearing. Appellant as a result suffered from high blood pressure and was
placed in the infirmary. Another attorney was appointed to represent appellant and the trial judge
at appellant's request recused himself. Many motions were filed by appellant and his counsel
resulting in several hearings. Two psychiatrists were appointed to examine appellant to determine
his competency to stand trial and to assist defense counsel in preparation for trial. Another
physician was appointed to examine appellant to determine whether he had a hearing problem that
would hamper him in his defense. Appellant's counsel was granted $1,500 to employ an
investigator.

 The alleged offense was committed on May 5, 1986. The victim of the offense,
who was nine years old when the offense was committed, her seven-year-old sister, who witnessed
the offense, and the victim's mother all testified that they knew the appellant by the name Tracy
Lee. Tracy Lee was the name appellant used at Alcoholics Anonymous meetings that he and the
victim's mother attended. Appellant helped the victim's mother move from Houston to San
Marcos and then lived with the mother and her daughters for several weeks. It was during this
time that the offense was committed. The victim and her sister, because of appellant's threats of
violence, did not report the offense for more than a year. The officer who investigated the case
was unable to find a driver's license, social security number, birth certificate or any other
identifier for Tracy Lee. The officer testified, "It took a long time. We eventually discovered
who the individual was, but it was not an easy process at all. When we originally investigated . . . 
We found no driver's license, no anything." The officer obtained a vehicle license number from
the victim's mother and with the help of "some other people," eventually concluded, incorrectly,
that the offender's name was Tracy Lee Bobo. On October 14, 1987, an indictment was returned
charging that the offense was committed by Tracy Lee Bobo.

 In December 1993, appellant was arrested on a traffic charge in Mississippi. The
record fails to reveal how appellant, using his real name Tracy Thorn, was identified as the person
indicted in the name of Tracy Lee Bobo. However, appellant was returned to Hays County and
on October 12, 1994, he was reindicted as "Tracy Lee Bobo a/k/a Tracy Thorn." On December
7, 1994, appellant represented by an appointed attorney was arraigned and pled not guilty; no
issue concerning appellant's name was raised.

 On February 6, 1995, appellant and his attorney appeared for a trial setting. 
Appellant told the trial court that his name was Edd Tracy Thorn and that neither Tracy Lee nor
Tracy Lee Bobo was his name and that he had not used those names. It was at this hearing that
appellant assaulted his appointed counsel.

 The evidence relied upon by appellant is that shown by "Defense Exhibits"
numbered one through fifteen. These items were in appellant's possession when he was arrested:


1. A Social Security card, numbered XXX-XX-XXXX issued to Tracy Thorn.

2. An undated "Veterans Hunting--Fishing Permit Valid in Oklahoma" issued to
Edd Tracy Thorn bearing his Social Security number, date of birth, physical
description, and his length of military service.


3. An undated "VA Patient Data Card" issued to Edd T. Thorn to be used in
applying for medial care. The card bears a Gulfport, Mississippi post office
address, appellant's Social Security number, and date of birth.


4. An Oklahoma "Voter Identification Card" issued to Tracy E. Thorn on April
10, 1992.


5. "State of Oklahoma--Security Verification Forms" issued to Ed Tracy Thorn
by insurance companies showing he had sufficient insurance to operate a car and
motorcycle in Oklahoma between October 14, 1992 and October 14, 1994.


6. A deposit slip receipt for $400 deposited with Hancock Bank, Gulfport
Mississippi. There is no name but there is an unexplained account number on the
slip.


7. An undated card issued to Edd T. Thorn by Hancock Bank.


8. An undated "Cirrus" "That Card" issued to Edd T. Thorn.


9. An undated Gulfport-Biloxi "Grand Advantage Players Club" card issued to
Tracy Thorn.


10. An undated slip of paper bearing an account number at the Central Bank of
Oklahoma City with names of individuals and telephone numbers on the back.


11. A letter dated January 24, 1994, on the letterhead of the Hays County Criminal
District Attorney, signed by the District Attorney and addressed to Edd Tracy
Thorn at a Gulfport, Mississippi address. (Appellant testified the letter was
received while he was in jail). The letter reads:


 Dear Mr. Thorn,


 After researching our records for charges on you we have not been
able to trace you by name only and the case number you gave does
not correspond to any law enforcement offense report number. If you
would please supply us with further information (date, charges and
agency) we will be glad to research more. We would also ask that
you give us information on your self (date of birth, driver's license,
etc.).


12. A Mississippi "Identification Card" issued to Edd T. Thorn on January 20,
1993 with a Gulfport, Mississippi address. The card bears appellant's Social
Security number and date of birth.


13. An undated "Department of Veterans Affairs" card showing the patients name
as Edd T. Thorn, a photograph, and appellant's social security number.


14. and 15. An Oklahoma "Identification Card" and a "Driver's License" issued
to Edd T. Thorn giving a date of birth and physical description. The expiration
date is September 1996.



 Appellant relies principally on the cases of Doggett v. United States, 505 U.S. 647
(1992) and Pierce v. State, 921 S.W.2d 291 (Tex. App.--Corpus Christi 1996, pet. ref'd). 
However, the facts in those cases, contrary to appellant's assertion, are distinguishable from the
facts in this case. In both cases the defendants had not used names other than their own when the
offenses were committed and they were indicted under their real names. Appellant asserts that if
the State had "run a credit report," as the Government did in Doggett, it could easily have found
appellant. We disagree. If the State had asked for a credit report on Tracy Lee or Tracy Lee
Bobo, it was not likely it would have found Tracy Thorn.

 We are not persuaded by appellant's argument. Although he may have been living
openly in Oklahoma and Mississippi using his real name after the offense was committed, he was
not using his real name at the time the offense was committed. The victim, her mother, sister, and
the investigating officer did not know appellant by the name Tracy Thorn. It would have been
much easier to find appellant if he had used his real name when the offense was committed and
thereafter used an assumed name. In that event, investigating officers could have found many
identifiers for Tracy Thorn such as a Social Security number and driver's license number. But
because officers could not find these and other identifiers for Tracy Lee or Tracy Lee Bobo,
efforts to find appellant were rendered much more difficult. The State had no reason to look for
Tracy Thorn, Edd Tracy Thorn, Edd T. Thorn, Tracy E. Thorn, or Ed Tracy Thorn. There is
no evidence that at any time after the offense was committed appellant used the name Tracy Lee
or Tracy Lee Bobo in Oklahoma, Mississippi, or anyplace else. Appellant's use of a name other
than his own at the time he committed the offense was the principle reason for the delay in his
arrest. The record fails to show that the delay in arresting appellant was the deliberate action or
negligence on the part of the State.

 A reviewing court should give considerable deference to a trial court's finding that
the State acted with diligence and was not negligent in seeking an accused's arrest. See Doggett,
505 U.S. at 652. In the circumstances of this case the trial court's implied finding that there was
not a lack of diligence on the part of the State in arresting appellant is founded in the record. We
find that the trial court did not err in finding the reason for the delay in appellant's arrest was
justified.

 A defendant's assertion of his speedy trial right is entitled to great weight in
determining whether he has been deprived of that right, and the failure to assert the right makes
it difficult for a defendant to prove he was denied a speedy trial. See Barker, 407 U.S. at 531. 
Evidence does not refute appellant's claim that he was unaware of the charge against him until
December 1993 when he was arrested. Therefore, he may not be charged with his failure to assert
his speedy trial right before that time. During the time between appellant's arrest and trial, he pro
se and through his counsel filed motions for speedy trial and to dismiss the indictment because of
trial delay. However, as we have already noted, the time between appellant's arrest and trial was
consumed with hearings and preliminary matters. At one trial setting, appellant's assault on his
counsel resulted in the appointment of new counsel, the trial court's recusal, and appellant being
placed in the infirmary. In addition to court appearances, appellant was examined and evaluated
by two psychiatrists. Another physician examined appellant in connection with his alleged hearing
impairment. In assessing the record to determine the weight to be given appellant's assertion of
his speedy trial right we find the scale is not tipped either against or in favor of appellant in
balancing the Barker formula factors.

 Prejudice, the fourth factor in the analysis, should be assessed in light of a
defendant's interests that the speedy trial right was designed to protect. See Barker, 407 U.S. at
532; Emery, 881 S.W.2d at 709. The Supreme Court has identified three such interests. They
are: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the
accused resulting from the pending charges, and (3) to limit the possibility that the defendant's
defense will be impaired. See Barker, 407 U.S. at 532; Smith v. Hooey, 393 U.S. 374, 378
(1969); Phillips v. State, 650 S.W.2d 396, 404 (Tex. Crim. App. 1983); Sinclair, 894 S.W.2d
at 440. Of the three interests, the most important is the last, because the inability of a defendant
adequately to prepare his case skews the fairness of the entire system. See Barker, 407 U.S. at
532. If witnesses die or disappear during a delay, the prejudice is obvious; there is also prejudice
if defense witnesses are unable to recall accurately events of distant past, and loss of memory is
not always reflected in the record. See Id.

 In this case there is no claim of oppressive pretrial incarceration. Also, because
appellant claims he was unaware of the pending charge before his arrest, he cannot have had,
before that time, any anxiety or concern about the pending charge. Therefore, the only prejudicial
interest to be seriously considered here is whether and to what extent the delay in prosecution
impaired appellant's ability to prepare his defense. The defendant has the initial burden to make
a showing of prejudice. See Emery, 881 S.W.2d at 709; Harris v. State, 489 S.W.2d 303, 308
(Tex. Crim. App. 1973).

 Appellant argues that Doggett requires that this case be dismissed even if appellant
has not shown prejudice. In Doggett the Supreme Court said, "presumptive prejudice cannot alone
carry a Sixth Amendment claim without regard to other Barker criteria." Doggett, 505 U.S. at
655-56.

 Appellant testified, out of the presence of the jury, that four of his friends who
could have testified concerning his relationship with the mother of the victim had all died before
the time of his trial. Appellant testified that these men could have testified he refused to lend $500
to the victim's mother and that the mother had tried to obtain possession of a vehicle appellant had
sold to another man. The victim, answering a question on cross-examination, testified that she
did not know of her mother being unable to repay a $500 loan to appellant. The victim's mother
denied that appellant had loaned her $500 at the time he helped her move from Houston to San
Marcos. Appellant has failed to show how the testimony of the four men, if they had been alive
at the time of trial, would have been relevant and admissible. Appellant's counsel's vague
references to witnesses who could not be located is unpersuasive. Appellant has failed to show
that the delay of his trial impaired his ability to prepare his defense.

 In summary, the balancing of the Barker factors weigh against appellant's claim of
the denial of a speedy trial. The six year delay between the first indictment and appellant's arrest
triggered a full Barker analysis. However, the principal reason for the six year delay is
attributable to appellant's assumption of a fictitious name at the time he committed the offense. 
This was the only name by which the victim, her mother, and her sister knew him. There is no
evidence that the State deliberately delayed appellant's arrest. The record does not show that the
delay in appellant's arrest was due to the State's negligence. Appellant's assertion of his speedy
trial right was not such that it weighted the balance in his favor. The record fails to show that the
delay in appellant's arrest impaired his ability to prepare his defense. Because record does not
show that appellant was deprived of his right to a speedy trial; we hold that the trial court did not
err in overruling appellant's motion to dismiss the prosecution of the case. Points of error one and
two are overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Chief Justice Aboussie, Justices Kidd and Dally*

Affirmed

Filed: December 17, 1998

Do Not Publish

















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



ant past, and loss of memory is
not always reflected in the record. See Id.

 In this case there is no claim of oppressive pretrial incarceration. Also, because
appellant claims he was unaware of t