Opinion issued March 31, 2005
















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00870-CR
 __________
 
THOMAS VARGAS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 956240
 

 
 
 MEMORANDUM OPINION
          A jury found appellant, Thomas Vargas, guilty of capital murder, and the trial
court sentenced him to life in prison, the only possible sentence for a juvenile
certified to be tried as an adult. In six points of error, appellant contends that the trial
court erred (1) in admitting his statements that were involuntarily made, (2) in
admitting unduly prejudicial photographs of the complainant, (3) in allowing a jury
charge that commented on the weight of the evidence, and (4) in denying his request
for lesser included offenses. We affirm. 
Background
          In the early morning hours of August 25, 2002, volunteer firefighter Lance
Taylor responded to a fire in the Pearland area. As Taylor conducted a search for
victims in the burning residence, he discovered Veda Marie Sutton, age 81, face down
in the kitchen. Taylor testified that it became apparent that he was dealing with more
than just a fire scene when he noticed “two handles” sticking out of the victim’s back
as well as “a large amount of blood.” Fearing that the roof would collapse, Taylor
and the members of the Pearland Volunteer Fire Department removed Sutton’s body
from the house. They placed Sutton’s body in an ambulance, where several pictures
were taken to show its condition immediately after removal from the home. 
          Officer Little, a Pearland patrolman at the scene, discovered that Sutton’s car
was missing from her garage and called dispatch with its description. Shortly
thereafter, the Alvin police located Sutton’s car, but appellant, who was driving the
car, fled and was ultimately apprehended after he and his girlfriend, Patricia Ray,
crashed the car, got out, ran from the police, and fell in a bayou. Ray had Sutton’s
credit card and jewelry, as well as $232 cash. In appellant’s pockets, the officers
discovered more than five dollars in coins, a small lock and key, two pendants, and
several necklaces. Several items were found in Sutton’s car, including additional
jewelry, a white t-shirt smelling of accelerants,


 a camera, and a rifle. Most of the
recovered jewelry was identified by the complainant’s daughter as belonging to her
mother. 
          Appellant, who was 15 years old, and Ray, who was 16 years old, were placed
in custody and taken to a juvenile detention facility in Brazoria County. A magistrate
gave appellant his juvenile statutory warnings,


 and appellant stated that he did not
understand his “right to terminate the interview.” The magistrate explained that, if
at any time during his interrogation appellant did not want to talk to police, appellant
had the right to remain silent. Detective Garza and Sergeant Moncrief of the Pearland
Police Department (PPD) then questioned appellant for approximately two hours in
a tape-recorded interview. 
          In his tape-recorded statement, appellant stated that he was 15 years old and
had been drinking and smoking marijuana the previous night. The crime spree began
when appellant and Ray were stranded by his brother on the way home from a fishing
trip; the two decided to steal a car so that they could drive the rest of the way home. 
Appellant recounted the events that took place at Sutton’s home, stating that he
forced his way into the house after Sutton let Ray in to use the telephone, and then
appellant brutally beat, stabbed, and robbed the elderly woman. The two handles
Firefighter Taylor saw in Sutton’s body were the knife and ice pick appellant used as
weapons. In an effort to destroy any evidence of their crime, appellant and Ray then
ignited the paint thinner and other flammable liquids with which they had soaked
Sutton’s body and home. Appellant and Ray used Sutton’s car to flee the burning
home with the stolen items, passing emergency personnel responding to the fire on
their way out of the neighborhood. 
          At trial, testimony from several witnesses confirmed the details of appellant’s
statements. Ray confirmed the course of criminal events throughout the night, with
little discrepancy between her testimony and appellant’s statement.


 Officer Morton
of the PPD testified about the robbery and stated that he recovered Sutton’s items
both in the stolen car and on appellant’s person. Officer Bort of the PPD testified that
the smell of accelerants was strong when he photographed Sutton’s body in the
ambulance. Harris County Fire Marshall Petty confirmed that accelerants were
detected at the scene. Assistant Harris County Medical Examiner Lopez testified,
using numerous autopsy photographs, that Sutton suffered blunt and sharp force
injuries as well as chemical burns consistent with the burning of flammable liquids.
Motion to Suppress Tape-Recorded Statements
          In points of error one and two, appellant contends that the trial erred in denying
his motion to suppress his tape-recorded statements. Appellant asserts that the
statements were involuntarily given because (1) investigating officers continued to
question him after he invoked his right to remain silent and (2) the statements were
improperly induced.
Standard of Review 
          We generally review a trial court’s ruling on a motion to suppress for abuse of
discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); Chiles v.
State, 988 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). 
Appellate courts afford almost total deference to a trial court’s determination of facts
supported by the record, particularly when those findings are based on the credibility
and demeanor of a witness. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997); Curry v. State, 965 S.W.2d 32, 34 (Tex. App.—Houston [1st Dist.] 1998, no
pet.). However, appellate courts review mixed questions of law and fact de novo
when resolution does not turn on an evaluation of credibility or demeanor. Guzman,
955 S.W.2d at 89, Curry, 965 S.W.2d at 34.
Invocation of the Right to Remain Silent
          The Fifth Amendment privilege against self-incrimination is protected during
custodial interrogation by certain procedural safeguards delineated in Miranda v.
Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). These “safeguards” have been codified
in the Texas Code of Criminal Procedure and in the Texas Family Code as they
pertain to the interrogation of children. See Tex. Code Crim. Proc. Ann. art. 38.22
(Vernon 1979 & Supp. 2004); Tex. Family Code Ann. 51.095 (Vernon 2002). 
Within these statutes, the “right to terminate a custodial interrogation” is a “critical
safeguard” of the right to remain silent. See Michigan v. Mosley, 423 U.S. 96, 103,
96 S. Ct. 321, 326 (1975). No formal invocation of this right is necessary. Watson
v. State, 762 S.W.2d 591, 597 (Tex. Crim. App. 1988). If the suspect indicates “in
any manner” that he invokes the right to remain silent, the interrogation must stop. 
Miranda, 384 U.S. at 473-474, 86 S. Ct. at 1627. However, any indication that the
suspect wishes to remain silent must be unambiguous, and interrogating officers are
not required to clarify wishes that are ambiguous. Dowthitt v. State, 931 S.W.2d 244,
257 (Tex. Crim. App. 1996). An officer’s failure to stop custodial interrogation after
an unambiguous invocation of the right to remain silent renders any subsequently
obtained statements inadmissible. Id.
          The issue presented in point of error one is whether appellant unambiguously
invoked his right to remain silent and terminate the interview. In determining
whether the right to remain silent was unambiguously invoked, courts must look to
the totality of the circumstances. Watson, 762 S.W.2d at 597. An ambiguity exists
where a statement or action is subject to more than one reasonable interpretation
under the circumstances. Cf. Dowthitt, 931 S.W.2d at 257 (holding that appellant’s
statement, “I can’t say more than that. I need to rest,” was ambiguous and indicated
only that appellant believed that he was physically unable to continue) But cf.
Watson, 762 S.W.2d at 599 (holding that appellant’s silence and refusal to speak
during repeated rounds of questioning was conduct that unambiguously
communicated appellant’s desire to invoke his right to remain silent); Cooper v. State,
961 S.W.2d 222, 226 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d) (holding that
“I’m not answering any questions” was an unambiguous invocation of the right to
remain silent).
          Here, during appellant’s tape-recorded interrogation, the following exchange
took place: 
[Garza]:                 Tell the truth this lady did nothing to you Thomas.
 
[Appellant]:           I didn’t.
 
[Garza]:                 Why did you kill her? 
 
[Appellant]:           I did not kill anybody.
 
[Garza]:                 Why did you kill this lady?
 
[Appellant]:           I don’t want to do this.
 
[Garza]:                 She begged you.
 
[Appellant]:           I don’t want to do this, I didn’t kill no lady.
 
[Garza]:                 You don’t want to do what? You don’t want to tell
the truth?
 
[Appellant]:           I’m trying to tell the truth.
 
[Garza]:                 No you’re not! Tell us the truth Thomas.
 
[Appellant]:           I didn’t touch her.
 
(Emphasis added.) Appellant argues that, when he twice stated “I don’t want to do
this,” he unambiguously invoked his right to remain silent, at which point the
interview should have ended. The interview continued, however, and, as a result,
appellant complains that any subsequently obtained statements were in violation of
his right to remain silent. 
          We evaluate this argument in light of the totality of the circumstances
surrounding appellant’s interrogation. At the time, appellant was 15 years old, an
average to good student in the ninth grade, with good communication skills and an
IQ of over 100. Initially, appellant failed to understand his right to terminate the
interview, but the magistrate further explained the right. In his testimony at the
suppression hearing, appellant insisted that, pursuant to the magistrate’s instructions,
appellant’s statement, “I don’t want to do this,” was intended to stop the interview. 
However, Detective Garza, an experienced investigator with more than 17 years of
service to the department, testified that he understood the statement to mean only that
appellant did not want to re-live the “gruesome details” of the complainant’s death. 
Detective Garza, though not required to do so, even asked appellant to clarify what
he did not want to “do,” thereby demonstrating that the meaning of appellant’s
statement was unclear at the time.
          Both appellant’s and Detective Garza’s interpretation of the statement’s
meaning are reasonable, and, therefore, the statement was ambiguous. See Dowthitt,
931 S.W.2d at 257. It is clear that resolution of the ambiguity hinged on the
credibility and demeanor of both appellant and Detective Garza during their
testimony at trial. We give almost total deference to the trial court’s resolution of
these facts. See Guzman, 955 S.W.2d at 89. The trial court did not abuse its
discretion in finding that appellant’s invocation of the right to remain silent was
ambiguous and that his statement was therefore admissible. 
          Accordingly, we overrule point of error one.
Improper Inducement
          In his second point of error, appellant contends that his statement was
improperly induced by Detective Garza’s alleged promise of a reduced sentence. 
Apellant’s motion to suppress his statement is nothing more than a specialized
objection to its admissibility, see Holmberg v. State, 931 S.W.2d 3, 5 (Tex.
App.—Houston [1st Dist.] 1996, pet. ref’d), and, as such, his right to appellate review
in this Court extends only to objections made in accordance with the rules of
appellate procedure. Harris v. State, 827 S.W.2d 949, 958 (Tex. Crim. App. 1992). 
          To preserve error for review, the record must show that a timely and specific
objection was made in the trial court, and that the court either ruled or refused to rule
on the objection. Tex. R. App. P. 33.1(a). “An objection stating one legal basis may
not be used to support a different legal theory on appeal.” Rezac v. State, 782 S.W.2d
869, 870 (Tex. Crim. App. 1990). In situations where a point of error does not
correspond to the objection made at trial, the trial court was not afforded the
opportunity to rule on the legal theory that is the basis for the appeal. Cook v. State,
858 S.W.2d 467, 474 (Tex. Crim. App. 1993). Consequently, nothing is preserved
for appellate review. Id.
          Appellant filed a written motion to suppress, inter alia, any written or oral
statements made by appellant. The motion generally asserted that appellant did not
understand his legal rights at the time any statement was taken and that the police
acted in reckless disregard of his constitutional and statutory rights. Even though the
written motion did not include “inducement” as a ground for suppression, the issue
was presented at the suppression hearing. Appellant’s counsel highlighted three
statements made during the interrogation: first and second were Detective Garza’s
statements “[H]elp yourself if you can,” and, “[T]hey’re not going to be in any trouble
if you tell the truth,”


 and third was appellant’s own statement, “I don’t want to do
this.” The crux of appellant’s argument was that these statements, when taken
together, were evidence of the interrogation’s coercive nature and rendered any
statement made by appellant involuntary. 
          On appeal, however, appellant does not assert any of the three aforementioned 
statements as evidence of inducement. Instead, appellant contends that he was
improperly induced when Detective Garza allegedly promised leniency, stating that
“the only thing you can do now is, is to try to lessen how many years you are going
to be in prison.” Appellant’s objections on appeal and at trial do not correspond. The
trial court was never afforded the opportunity to rule, or to refuse to rule, on the issue
of whether the alleged promise of a reduced sentence induced appellant’s statements. 
Consequently, appellant waived his objection and nothing is presented for our review. 
See Tex. R. App. P. 33.1(a). 
          We overrule point of error two.
Improperly Admitted Photographs
          In points of error three and four, appellant contends that the trial court erred in
admitting into evidence one photograph of the complainant taken while she lay in an
ambulance and numerous other photographs taken during complainant’s autopsy,
because they were not relevant and were extremely prejudicial.
Standard of Review
          We review a trial court’s decision to admit or exclude evidence under an abuse
of discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). 
A trial court’s ruling will not be reversed unless it falls outside the zone of reasonable
disagreement. Id. 
Admission of the Photographs
          Relevant evidence is evidence having any tendency to make the existence of
a fact that is of consequence to the outcome of the case more or less probable than it
would be without the evidence. Tex. R. Evid. 401. In other words, evidence must
satisfy two requirements in order to be relevant—materiality and probativeness. Cruz
v. State, 122 S.W.3d 309, 312 (Tex. App.—Houston [1st Dist.] 2003, no pet.). 
Relevant evidence is generally admissible under Texas Rule of Evidence 402;
however, the admission of potentially prejudicial evidence is governed by Rule 403. 
Tex. R. Evid. 402, 403. In determining whether potentially prejudicial evidence was
properly admitted, the appropriate inquiry is not whether the evidence was more
prejudicial than probative, but rather, whether the probative value was substantially
outweighed by the danger of unfair prejudice or needless presentation of cumulative
evidence. Resendiz v. State, 112 S.W.3d 541, 545 (Tex. Crim. App. 2003). 
          When photographs are the evidence a party is seeking to admit, it is an abuse
of discretion to admit the photographs only when their probative value is small and
their potential prejudice great. Burdine v. State, 719 S.W.2d 309, 316 (Tex. Crim.
App. 1986); O’Neill v. State, 681 S.W.2d 663, 671 (Tex. App.—Houston [1st Dist.]
1984, pet. ref’d). A trial court must consider the factors affecting a photograph’s
probative value and must balance those factors against the tendency, if any, the
photograph has to encourage resolution of material issues on an inappropriate
emotional basis. Salazar v. State, 38 S.W.3d 141, 152 (Tex. Crim. App. 2001) (citing
Ladd v. State, 3 S.W.3d 547, 568 (Tex. Crim. App. 1999)). Factors such as the
number of photographs offered, their gruesomeness, their detail and size, whether
they are black and white or color, whether they are close-up, whether the body is
naked or clothed, and any other factors unique to the case are indicative of a picture’s
tendency to cause emotional decision-making. Burdine, 719 S.W.2d at 316; Long v.
State, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991). The availability of other means
of proof and the circumstances unique to each individual case must also be
considered by the court. Robinson v. State, 844 S.W.2d 925, 928 (Tex.
App.—Houston [1st Dist.] 1992, no pet.). In the balancing analysis, however, there
is a presumption favoring probative value over unfair prejudice or cumulative effect. 
See Goldberg v. State, 95 S.W.3d 345, 366 (Tex. App.—Houston [1st Dist.] 2002,
pet. ref’d). 
          Additionally, “autopsy photographs are generally admissible unless they depict
mutilation of the victim caused by the autopsy itself.” Rojas v. State, 986 S.W.2d
241, 249 (Tex. Crim. App. 1998). In other words, what is depicted in the photograph
must be fairly attributable to the actions of the appellant rather than to the work of the
medical examiner, or else the appellant’s case is unfairly prejudiced. Id. However,
when the photographs at issue are depictions of internal organs removed from the
body for the purpose of illustrating the extent of the injury to the organ, the jury is not
likely to attribute the removal of the organs to the appellant. See Salazar, 38 S.W.3d
at 152. Accordingly, the mere fact that the organs were separated from the body in
pictures shown to the jury is not, by itself, dispositive of whether the exhibits should
have been admitted. Id. 
          Here, appellant first contends that State’s exhibits S73, A26, and 31 additional
autopsy photographs are irrelevant.


 The record contains black and white
photocopies of the exhibits, that may or may not reflect their actual size. However,
the record is more specific as to State’s exhibit S73, indicating that it is a three-by-five inch color photograph of the complainant lying in an ambulance immediately
after firefighters removed her body from the burning house. Exhibit S73 is both
material and probative because it established the condition of the complainant at the
crime scene. State’s exhibit A26, a two-by-four inch photograph of the complainant’s
face taken during autopsy, is also material and probative of the fact that the autopsy
was performed on the same person removed from the crime scene by ambulance. 
Finally, the numerous autopsy photographs are probative of the complainant’s cause
of death, a material element in the offense of capital murder. See Etheridge v. State,
903 S.W.2d 1, 21 (Tex. Crim. App. 1994) (holding that pictures depicting the nature,
location, and extent of a victim’s injuries are probative). Because all of the objected-to photographs are both material and probative, they are relevant under Texas Rule
of Evidence 401. Tex. R. Evid. 401.            
          Appellant next contends that the probative value of the same objected-to
photographs is substantially outweighed by the danger of unfair prejudice pursuant
to Rule 403. The State had several ambulance photographs, but chose to admit only
S73. Exhibit S73 is undeniably gruesome, detailed, and in color, but it was not
enlarged and the complainant’s body is clothed. State’s exhibit A26 is one of three
facial shots introduced into evidence by the State.


 It is a close-up, detailed depiction
of the injuries to the right side of the complainant’s face; however the picture is only
two-by-four inches in size. The remaining 31 autopsy photographs are black and
white in the record, and none is larger than three-by-five inches. The detail in the
photographs is graphic, but each serves the purpose of illustrating the nature and
extent of the complainant’s injuries. Several of the photographs depict the
complainant’s internal organs removed from her body; however, as noted earlier, this
is not dispositive of whether the photographs were properly admitted.


 Additionally,
the complainant is unclothed in only one of the more than 30 photographs, and the
area exposed is not of a particularly sensitive nature.


 
          While there is no doubt that the photographs “are gruesome in that they depict
disagreeable realities, . . . they depict nothing more than the reality of the brutal crime
committed.” Chamberlain v. State, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). 
Absent the photographs in the record, the State is left with only the oral testimony of
Firefighter Taylor and Officer Bort to establish the condition of the body at the crime
scene, and the testimony of Assistant Medical Examiner Lopez to explain the cause
of death to the jury. Moreover, the burden of proving that the woman pictured in the
autopsy was the same woman pictured at the crime scene would have been needlessly
complicated. Additionally, the State narrowed its pool of approximately 150
available autopsy photographs, introducing only 50 at trial. The potential for unfair
prejudice in this case is not sufficient to rebut the presumption of probative value in
our Rule 403 balancing analysis. Therefore, the admitted photographs were not
unduly prejudicial. 
          Appellant finally argues that the probative value of exhibit A26 and the
additional 31 autopsy photographs is outweighed by the needless presentation of
cumulative evidence. Neither the record nor appellant’s brief is specific as to which
photographs appellant believes are cumulative; however, his objection generally
asserted that the same injuries were depicted in more than one photograph. Most of
the photographs are clearly unique because of their angle or distance from the injury. 
Close-up photographs and photographs taken from a different vantage point aid in the
jury’s understanding of the nature of the injuries involved. See Matamoros v. State,
901 S.W.2d 470, 476 (Tex. Crim. App. 1995). 
          The only potentially cumulative photographs are A31 and A32, showing the
complainant’s tongue removed from her throat. The State argued before the judge
that the photographs show the puncture wound to the throat area from different sides
of the tongue; however, there was no differentiation between the two photographs in
the medical examiner’s testimony before the jury. The examiner indicated simply that
both photographs showed the hemorrhaging and bleeding around the stab wound in
that area. Assuming, without deciding, that one of the pictures of the tongue is
cumulative and that it was error to admit one of them, there is no harm to appellant’s
case, given the substantial weight of the other photographs shown to the jury. 
         We hold that the trial court did not abuse its discretion in deciding that the
probative value of the objected-to photographs was not substantially outweighed by
either the danger of unfair prejudice or the needless presentation of cumulative
evidence. Accordingly, we overrule points of error three and four.
Jury Charge
          In point of error five, appellant contends that the trial court erred by allowing,
despite appellant’s objection, a jury charge that commented on the weight of the
evidence. The complained-of charge contained the following instruction concerning
the admissibility of appellant’s taped confession:
An oral statement of an accused may be used in evidence against him if
it appears that the same was freely and voluntarily made.
          No oral statement made by an accused juvenile as a result of
custodial interrogation (while the accused was in jail or other place of
confinement or in the custody of a peace officer) is admissible as
evidence against him in any criminal proceeding unless:
. . . .
(b)     Prior to the statement but during the recording the accused is
given the following warning by a magistrate:
          (1)     he has the right to remain silent and not make any
statement at all and that any statement he makes may be
used in evidence against him;
          (2)     he has the right to have a lawyer present to advise him
prior to or during any questioning;
          (3)     if he is unable to employ a lawyer, he has the right to have
a lawyer appointed to him to advise him prior to or during
any questioning or interviews with peace officers or
attorneys representing the state;
          (4)     he has the right to terminate the interview at any time; and
          (5)     the juvenile must knowingly, intelligently, and voluntarily
waive each right stated in the warning;
. . . .
          A statement invoking one of the rights above must be clear and
unambiguous. A statement is not voluntarily made if prior to or during
the statement, the accused invokes one of the rights set out above.
          So in this case, if you find from the evidence, or if you have a
reasonable doubt thereof, that prior to the time the defendant gave the
alleged statement to Detective Armando Garza, if he did give it, the
foregoing provisions were not complied with or if you find the oral
statement, if any, was not freely and voluntarily made, then you will
wholly disregard the alleged statement and not consider it for any
purpose; if, however, you find beyond a reasonable doubt that the
defendant was warned in the respects outlined above prior to his having
made such statement, if he did make it, still, before you may consider
such statement as evidence in this case, . . .
 
(Emphasis added.) Appellant specifically complains of the italicized portion of
the charge.
Standard of Review 
          In reviewing a trial court’s charge to the jury, we must engage in a two-step
analysis to determine: (1) whether the charge was erroneous and, if so, (2) whether
the error was harmful. Gibson v. State, 726 S.W.2d 129, 133 (Tex. Crim. App. 1987);
Nguyen v. State, 811 S.W.2d 165, 167 (Tex. App.—Houston [1st Dist.] 1991, pet.
ref’d). The degree of harm required to reverse an individual case depends upon
whether the error was preserved in the trial court. Gibson, 726 S.W.2d at 133. If the
error was properly preserved at trial, any actual harm, regardless of degree, is
sufficient to require a reversal of the conviction. Almanza, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985); Jones v. State, 962 S.W.2d 96, 98 (Tex. App.—Houston [1st
Dist.] 1997), aff’d, 984 S.W.2d 254 (Tex. Crim. App. 1984). If the error is not
properly preserved, the harm must be so egregious that it deprives the accused of a
“fair and impartial trial.” Almanza, 686 S.W.2d at 171; Jones, 962 S.W.2d at 98. To
preserve error related to the jury charge, the appellant must either object or request
a charge at trial. Vasquez v. State, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996). 
          Here, because appellant objected to the jury charge, the alleged error was
properly preserved, and a finding of any actual harm is sufficient to reverse
appellant’s life sentence. However, any harm must be evaluated in light of the entire
charge, the arguments of counsel, the state of the evidence, and any other relevant
information revealed by the trial record as a whole. Saunders v. State, 913 S.W.2d
564, 574 (Tex. Crim. App. 1995); Block v. State, 986 S.W.2d 389, 391 (Tex.
App.—Houston [1st Dist.] 1999, pet. ref’d). 
The Jury Charge
          The function of the jury charge is to instruct the jury on the law applicable to
the case. Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). The
statement of the law in the charge must be correct because it is the instrument by
which the jury convicts. Benson v. State, 661 S.W.2d 708, 713 (Tex. Crim. App.
1982). Generally, when evidence at trial raises a defensive issue and the defendant
properly requests a jury charge on that issue, the trial court must submit the issue to
the jury. Mendoza v. State, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002). 
Specifically, when evidence presented at trial raises a factual dispute over whether
a defendant’s statement was voluntary, the defendant is entitled to an instruction in
the jury charge advising the jury generally on the law relevant to the statement. 
Dinkins v. State, 894 S.W.2d 330, 353 (Tex. Crim. App. 1995). The evidence that 
raises the issue may be strong, weak, impeached, undisputed, or even beyond belief. 
Mendoza, 88 S.W.3d at 239. 
          Section 51.095 of the Texas Family Code allows the statement of a child to be
used as evidence only if it appears that the statement was freely and voluntarily made. 
Tex. Fam. Code Ann. § 51.095 (Vernon 2002). Under article 38.23, the jury shall
be instructed that, if it believes, or has a reasonable doubt, that the evidence was
obtained in violation of the laws of Texas, including section 51.095, then the jury
shall disregard such evidence. Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon
1979). The terms of article 38.23 are mandatory. Mendoza, 88 S.W.3d at 239. 
          The instruction that “a statement invoking one of the rights above must be clear
and unambiguous” does not involve a recitation of specific facts or call attention to
a specific piece of evidence. Rather, it is a correct statement of the law, under
Dowthitt, that cannot be construed as a comment on the weight of the evidence. See
Dowthitt , 931 S.W.2d at 257. 
          We overrule point of error five.
 
Lesser-Included Offense
          In point of error six, appellant argues that the trial court erred by denying his
request for the lesser included offenses of murder, robbery, and aggravated robbery.
Standard of Review
          A charge on a lesser included offense must be given if: (1) the lesser included
offense is included within the proof necessary to establish the offense charged and (2)
some evidence exists in the record that would allow a jury to rationally find that, if
the defendant is guilty, he is guilty only of the lesser offense. Bignall v. State, 887
S.W.2d 21, 23 (Tex. Crim. App. 1994); Jones v. State, 921 S.W.2d 361, 364 (Tex.
App.—Houston [1st Dist.] 1996, pet. ref’d). In making this determination, we must
consider all of the evidence presented. Bignall, 887 S.W.2d at 23. Anything more
than a scintilla of evidence is sufficient to entitle a defendant to a charge on a lesser
included offense. Jones, 962 S.W.2d at 98. However, a charge on a lesser included
offense is not required when the defendant either presents evidence that he committed
no offense or presents no evidence at all. Bignall, 887 S.W.2d at 24; Jones, 921
S.W.2d at 364. 
Murder, Robbery, and Aggravated Robbery
          To prove capital murder in this case, the State was required to show that
appellant intentionally or knowingly caused the death of the complainant and that he
intended to commit murder in the course of committing or attempting to commit the
robbery of the complainant. Tex. Pen. Code Ann. § 19.03 (Vernon Supp. 2004-2005). Under this standard of proof, murder is a lesser included offense of capital
murder because the same facts establish both offenses. Tex. Pen. Code Ann. §
19.02(b)(1) (Vernon 2003). For the same reason, robbery, which requires a person
to intentionally, knowingly, or recklessly cause bodily injury to another in the course
of committing theft, and aggravated robbery (which is “robbery” with the additional
element of use or exhibition of a deadly weapon) are lesser included offenses of
capital murder. Tex. Pen. Code Ann. §§ 29.02, 29.03 (Vernon 2003). As a result,
the first prong of the two-prong test is satisfied. 
          Under the second prong of the test, appellant was entitled to a charge on the
lesser included offenses of murder, robbery, and aggravated robbery only if there was
some evidence that would permit the jury to rationally find that appellant committed 
one of the lesser included offenses without also finding him guilty of capital murder. 
Appellant contends that, if the jury disbelieved the testimony of appellant’s girlfriend
and chose to ignore his tape-recorded confession, then it would be rational for the
jury to find him guilty only of a lesser included offense. Mere disbelief of evidence
establishing the greater offense is insufficient; there must be some evidence disputing
an element of the greater offense. See Johnson v. State, 84 S.W.3d 726, 732 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d). In Bignall v. State, 887 S.W.2d 21 (Tex.
Crim. App. 1994), the Court of Criminal Appeals held, “[I]t is not enough that the
jury may disbelieve crucial evidence pertaining to the greater offense; there must be
some evidence directly germane to a lesser-included offense for the factfinder to
consider before an instruction on a lesser-included offense is warranted.” Id. at 24.
Appellant, however, presented no evidence at trial, and, in reviewing all of the
evidence in the record that would only support a lesser conviction, we find none. 
Even absent the testimony of appellant’s girlfriend and the tape-recorded confession,
the autopsy photographs attest that the complainant was murdered and set on fire;
appellant was apprehended in the complainant’s car; he had the complainant’s
property on his person; and the t-shirt in the car smelled of accelerants. Given these
facts, no rational trier of fact could conclude that appellant was guilty of murder,
robbery, or aggravated robbery without finding him guilty of capital murder. The
second prong of the test is unsatisfied, and the trial court, therefore, did not err in
failing to submit jury instructions on the lesser included offenses. 
          We overrule point of error six.
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Keyes, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).